United States District Court
Middle District of Florida
Jacksonville Division

KYLE POWELL,

*Plaintiff,*

v.                                                    NO. 3:25-CV-859-PDB

COMMISSIONER OF SOCIAL SECURITY,

*Defendant.*

---

## Order

Proceeding under 42 U.S.C. § 405(g), the plaintiff requests judicial review of a final decision by the Commissioner of Social Security. Doc. 1. The procedural history, evidence, and law are summarized in the Administrative Law Judge's (ALJ's) decision, Tr. 11–21, and the parties' briefs, Docs. 12, 15, 16, and not fully repeated here. The pertinent period is September 1, 2021, to March 26, 2025. Tr. 21.

### 1.

Section 405(g) details the scope of review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner … or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner …, because of failure of the claimant or such individual to submit proof in conformity with any

> regulation prescribed …, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g) for claims for supplemental security income). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoted authority omitted).

**2.**

The ALJ found that the plaintiff has not engaged in substantial gainful activity since September 1, 2021, the application date. Tr. 13.

The ALJ found that the plaintiff has severe impairments of affective disorders, attention deficit hyperactivity disorder (ADHD), anxiety disorder, post-traumatic stress disorder (PTSD), personality disorder, and obesity. Tr. 13. The ALJ found that the evidence did not establish autism as a medically determinable impairment. Tr. 13.

The ALJ found that the plaintiff has no impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 14. The ALJ specifically considered Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), 12.11 (neurodevelopmental disorders), and 12.15 (trauma-and stressor-related disorders). Tr. 14.

The ALJ analyzed the "paragraph B" criteria and found moderate limitations in each area. Tr. 14.

For the area of "understanding, remembering or applying information," the ALJ explained, "On examination, memory is generally found good or normal although mild memory impairment is noted at times. Testing also revealed working memory in the average range. Nevertheless, the [plaintiff] has reported issues with memory, understanding, and following instructions (Exhibits 9E; 1F; 3F; 5F; 8F; 17F; 18F [Tr. 495–502, 608–11, 678–739, 756–63, 781–823, 1059–1202])." Tr. 14.

For the area of "interacting with others," the ALJ explained, "The [plaintiff] testified to not liking crowds or interacting with others. Other evidence indicates the [plaintiff] has reported having issues working with others and that they did not maintain friendships. The [plaintiff]'s social skills were described as awkward. However, treatment records usually described the [plaintiff] as cooperative (Exhibits 1F; 3F; 5F; 8F; 11F; 14F; 17F; 18F [Tr. 608–11, 678–739, 756–63, 781–823, 842–84, 892–918, 1059–1202])." Tr. 14.

For the area of "concentrating, persisting or maintaining pace," the ALJ explained, "The [plaintiff] reported issues with concentration and completing tasks and treatment evidence documents a history of ADHD. However, examinations and testing show largely intact normal or intact concentration and attention. (Exhibits 1F; 2F; 3F; 5F; 8F; 18F [Tr. 608–739, 756–63, 781–823, 1066–1202])." Tr. 14.

For the area of "adapting or managing oneself," the ALJ explained, "The record documents a history of suicidal ideation and a suicide attempt. The [plaintiff] also has variable insight and [judgment] ranging from poor/impaired to fair to adequate to normal/good/intact (Exhibits 2F; 3F; 5F; 8F; 18F; 20F [Tr. 612–739, 756–63, 781–823, 1066–1202, 1219–74])." Tr. 14.

The ALJ found that the "paragraph C" criteria are not present. Tr. 15. The ALJ explained, "The record does not establish that the [plaintiff] has only marginal adjustment, that is, a minimal capacity to adapt to changes in the [plaintiff]'s environment or to demands that are not already part of the [plaintiff]'s daily [sic]." Tr. 15.

The ALJ found that the plaintiff has the residual functional capacity (RFC) to perform medium work with the following additional limitations:

> [T]hey need to avoid ladders or unprotected heights. They need to avoid the operation of heavy moving machinery. They need a low stress work environment (i.e., no production line). They need simple tasks. They need to avoid contact with the public or coworkers (meaning they need tasks that do not require the assistance of others or require them to assist others in the performance of their tasks).

Tr. 15.

The ALJ incorporated this summary from another ALJ of the plaintiff's testimony from an October 2023 administrative hearing:

> At the hearing, the plaintiff testified that they are unable to maintain employment due to their various mental health issues, including depression, anxiety, and ADHD. The [plaintiff] testified that they experience hallucinations, insomnia, and mood swings. The [plaintiff] testified that they experience panic attacks due to thoughts about their future and financial issues. The [plaintiff] testified that they do not believe they could maintain employment due to their issues with anxiety and panic, which results in them "shutting down." The [plaintiff] testified that they have or are in the process of contact [sic] vocational rehabilitation services in an attempt to secure employment.
>
> The [plaintiff] is prescribed medication. The [plaintiff] testified that the medication is effective in allowing them to complete a greater range of activities. For example, the [plaintiff] testified that they enjoyed playing games on the Twitch platform. Asked about medication side effects, the [plaintiff] testified that they do not notice

4

> any side effects, which is consistent with their statements in the record (Ex. 11F, page 4 [Tr. 845]).
>
> The [plaintiff] does not maintain a valid driver's license. The [plaintiff] testified that they have never had a valid driver's license. The [plaintiff] testified that they are reliant on others to provide transportation, primarily their sister. Asked about daily activities, the [plaintiff] testified that they enjoy playing games, and watching online videos. The [plaintiff] testified that they only infrequently wash clothes and bathe.

Tr. 240–41 (summary); Tr. 15 (ALJ's incorporation of the summary).

The ALJ summarized the plaintiff's testimony from a March 2025 administrative hearing:

> At the most recent hearing, the [plaintiff] testified that their medications help with no specific side effects. They can make simple meals, do dishes, sweep some, and take out the trash. They use a computer and smartphone to browse the internet, watch YouTube, games, and banking. They grocery shop every few weeks. They do no[t] like crowds and do not like interacting with others. They currently see a therapist and attempted suicide in May 2024.

Tr. 15.

The ALJ found that "the medical evidence of record supports the presence of impairments that could have reasonably been expected to cause the types of symptoms that the [plaintiff] alleges, but not to the full extent to which [the plaintiff] alleged them." Tr. 16. The ALJ observed that the plaintiff had not alleged suffering from any physical impairment but found that the plaintiff's obesity can affect the plaintiff's ability to lift heavy weight and limits the plaintiff's ability to climb ladders, work at unprotected heights, and operate heavy moving machinery. Tr. 16.

The ALJ summarized the evidence of mental impairments:

Mentally, the evidence documents a history of ADHD, anxiety, depression, a bipolar disorder, PTSD, a personality disorder. The [plaintiff] underwent a consultative examination in December 2021 and, at the time, reported having no current mental health treatment or psychiatric treatment with the only prior treatment when she was a young child for ADHD. At the examination, the [plaintiff] reported a 10-year history of depression and panic attacks. Mental status findings document a coherent thought process, dysthymic mood, anxious and dysphoric affect, with no errors on attention and concentration testing, mildly impaired memory skills due to anxiety, poor insight, and questionable judgment (Exhibit[] 5F [Tr. 756–63]).

In September 2022, the [plaintiff] established care at Aza Health after being hospitalized that month with suicidal ideations. Mental status findings were largely unremarkable. The [plaintiff] was diagnosed with depression, anxiety and a behavioral disorder. They were instructed to take all medications as prescribed and to avoid stressful situations. The [plaintiff] continued followup and counseling at Aza Health through May 2023. Those records document variable report of symptoms. Notably they indicate medication effectiveness with mood improvement when the [plaintiff] is compliant with medication and increased symptoms during periods when the [plaintiff] stopped taking medications or ran out of them. Counseling recommendations also included yoga and tai chi. By mid-2023 the [plaintiff] reported stable mental health symptoms (Exhibits 2F; 3F; 14F; 15F; 16F [Tr. 612–739, 892–1058])[.]

The [plaintiff] also underwent a second consultative examination in March 2023. The [plaintiff] reported significant mood swings due to being off of their medications. The [plaintiff] reported that they were off medication because they could not secure transportation. The [plaintiff] denied needing reminders to take their medication. Mental status findings include intact memory, concentration, and attention. The [plaintiff] was described [as] cooperative and receptive, with good eye contact, though also noted as mildly histrionic. The [plaintiff]'s thought processes were logical, linear and goal directed, and their affect was appropriate (Exhibit 1F [Tr. 608–11]).

The [plaintiff] next established care at Epic in April 2023 and a care plan was established. However, transportation was an issue, and,

6

while Epic offered the [plaintiff] a ride[-]sharing service, the [plaintiff] declined and it appears treatment did not continue (Exhibits 8F; 10F; 11F; 12F [Tr. 781–823, 839–88]).

The [plaintiff] was again hospitalized in May 2024 after an overdose. The [plaintiff] reported having been off medication since September 2023 and having taken 8 pills they had left over since that time. The [plaintiff] insisted it was not really a suicide attempt but a test to see how much they could take (Exhibits 14F; 18F [Tr. 892–918, 1066–1202]).

Following the hospitalization, the [plaintiff] established care at SMA Healthcare. By September 2024, the [plaintiff] reported feeling more stable and expressed the desire to become more independent and seek employment. She noted improved anxiety symptoms, no panic attacks along with improvement in depressive symptoms. By November 2024, the [plaintiff] reported not consistently taking medication but still reported an improvement in symptoms. By December 2024, the [plaintiff] reported doing pretty good and depression symptoms fairly well controlled with only intermittent anxiety. Mental status findings at SMA document variable insight, variable judgment, no memory impairment, adequate concentration, variable mood, and variable thought content (Exhibit 20F [Tr. 1219–74]).

In August 2024, the [plaintiff] also underwent a psychological evaluation for Vocational Rehabilitation purposes. The examination revealed average range verbal comprehension, working memory, and processing speed abilities, with low average perceptual reasoning. The evaluator concluded that reading and math tasks will not cause difficulties for the [plaintiff] in any training or job program, the [plaintiff]'s success in the workplace will be contingent on the continuation of medication and therapy, that the [plaintiff] should continue counseling and that the [plaintiff] should choose a job recognizing his own limitations. The evaluator concluded the [plaintiff] may want to begin with part-time work (Exhibit 17F [Tr. 1059–65]).

Tr. 16–17.

The ALJ analyzed the evidence and provided reasons for the RFC:

Overall, the evidence supports the mental limitations outlined in Finding 4. The [plaintiff] testified that their prescribed medications

7

are effective and do not cause any significant side effects. Medication effectiveness is also documented in treatment notes which document symptom improvement and stability when the [plaintiff] is taking medication. Moreover, the [plaintiff]'s symptoms have improved to the extent that recent evidence indicates they are looking for work and interested in possibly working with computers. In the pursuit of work, the [plaintiff] has sought out vocational assistance programs. The record also indicates the [plaintiff] plays video games and uses the internet for browsing YouTube, and for banking. They can do some chores, clean, and prepare simple meals. The[y] also grocery shop, have friends, and engage in hobbies. Overall, this evidence is inconstant [sic] with the degree of limitation alleged and the alleged disability.

Nevertheless, the [plaintiff]'s mental impairments can be expected to have some impact on functioning. Given the anxiety and depression and recommendations the [plaintiff] avoid stressful situations, the [plaintiff] needs a low stress work environment meaning no production line work. Further, because of the AHDD [sic] history and the mildly impaired memory which was found on testing, the [plaintiff] needs only simple tasks. Finally, considering the [plaintiff]'s impairments and testimony she does not like crowds or dealing with others, the [plaintiff] needs to avoid contact with the public or coworkers meaning they need tasks that do not require the assistance of others or require them to assist others in the performance of their tasks. However, given the efficacy of treatment, improvement and stability in symptoms and pursuit of employment, greater restrictions are not warranted.

Tr. 17–18.

The ALJ analyzed the medical opinions and prior administrative medical findings. Tr. 18–19. The ALJ found the opinion of consultative examiner Darrin Kirkendall, Ph.D., "partially persuasive" and provided the following explanation:

Dr. Kirkendall found the [plaintiff] had no limitation in the ability to follow and understand simple directions and instructions or perform simple or complex tasks independently, moderate limitations in the ability to maintain attention and concentration, marked limitations in the ability to maintain a regular schedule adequately relate with others, or deal with stress is markedly limited, and mild limitations

8

> in the ability to make appropriate decisions. Dr. Kirkendall's opinion is reasonably supported by his examination findings and the symptoms the [plaintiff] reported during the examination. Dr. Kirkendall documented some memory impairment on testing, poor insight, and questionable judgment. While it is reasonable to expect some limitations from the [plaintiff]'s mental impairments, at the time of Dr. Kirkendall's December 2021 examination, the [plaintiff] was not engaged in any mental health or psychiatric treatment. As outlined above, medication, therapy, and counseling have been beneficial in improving and stabilizing mental symptoms such that the [plaintiff] is pursuing employment. Given this more recent evidence, the undersigned finds the degree of limitation Dr. Kirkendall outlined, in particular the marked issues relating with others, dealing with stress and maintaining a regular schedule, are not consistent with the updated record (Exhibit 5F [Tr. 756–63]).

Tr. 18 (errors in original).

The ALJ found the opinion of consultative examiner Robin Johnson, Psy.D., "partially persuasive" and provided the following explanation:

> Dr. Johnson found the [plaintiff] retains the ability to perform simple and repetitive work tasks and[] sustain attention and concentration on simple and repetitive work tasks. Dr. Johnson further found the [plaintiff] is mildly impaired in the ability to adhere to a work schedule, adjust and adapt to workplace changes and interact appropriately with others (Exhibit 1F [Tr. 608–11]). Dr. Johnson's opinion is generally consistent with h[er] own examination findings, the [plaintiff]'s treatment history, and mental status findings in treatment notes documenting variable mood, memory, judgement, and insight. However, notably, at the time of the examination, the [plaintiff] reported to Dr. Johnson having wildly up and down moods due to being off medication. As outlined above, medication, therapy, and counseling have been effective in improving and stabilizing symptoms. Therefore, to the extent Dr. John[son]'s opinion suggests limitations greater than those outlined in Finding 4, such limitations are inconsistent with the updated record.

Tr. 18.

The ALJ found the reports of the state agency psychological consultants "partially persuasive" and provided the following explanation:

9

Consultant Alan Harris, Ph.D., concluded the [plaintiff] had the ability to understand and remember and maintain concentration, attention and persistence for simple and complex tasks, relate appropriately with the public on a [casual,] limited basis, accept non-confrontational supervision and constructive criticism [from] supervisors and usually relate appropriately with cooperative non-threatening supervisors, and adapt to an ordinary routine work setting. Consultant James Levasseur determined the [plaintiff] c[a]n complete simple and complex tasks, relate effectively with the public and co-workers, cooperate on routine tasks and transactions, accept directions and feedback, but may show limited tolerance for frequent recurrent contact with the general public, and can adapt to most changes and task demands (Exhibits 1A; 4A [Tr. 209–17, 220–26]). The consultants support their findings with citation[s] to specific objective evidence and treatment. There is also a high degree of consistency between their reports. However, in considering the entire updated record, including the [plaintiff]'s testimony, the undersigned finds it appropriate to limit the [plaintiff] to only simple tasks. Given that the undersigned finds the updated record supports limiting the [plaintiff] to only simple tasks[,] the consu[lt]ants' reports are not fully consistent with the evidence of record. Additionally, terms Dr. Harris uses such as … non-confrontational and non-threatening, are not vocationally defined, and thus, does not adequately articulate the limitation for use in a[n] [RFC] assessment.

Tr. 18–19.

The ALJ observed that psychologist Matthew Lane performed a psychological evaluation for rehabilitation purposes and did not provide a medical opinion. Tr. 19. The ALJ found that a vocational evaluation by Karla Wooten is not a medical opinion. Tr. 19. The ALJ found that, to the extent Dr. Lane and Wooten made statements about whether the plaintiff is disabled or can work, the statements are neither valuable nor persuasive. Tr. 19.

The ALJ found that the plaintiff has no past relevant work and a limited education. Tr. 19. The ALJ found that the plaintiff was 27 years old at the time of applying for supplemental security income and, therefore, considered a "younger individual." Tr. 19. The ALJ found that, considering the plaintiff's

10

age, education, work experience, and RFC, the plaintiff can perform jobs that exist in significant numbers in the national economy, such as "Cleaner II," "Hand Packager," "Laundry Worker," and "Marker." Tr. 19–20. Consequently, the ALJ found the plaintiff not disabled. Tr. 21.

**3.**

The plaintiff argues that reversal is warranted because the ALJ erred by failing to clearly explain why he found the prior administrative medical findings of Dr. Harris and Dr. Levasseur and the medical opinion of Dr. Kirkendall only partially persuasive. Doc. 12 at 11–21.

An ALJ is "responsible for reviewing the evidence and making administrative findings of fact and conclusions of law." 20 C.F.R. § 416.913a(b). An ALJ "will consider prior administrative medical findings and medical evidence[.]" *Id.* An ALJ is "not required to adopt any prior administrative medical findings, but … must consider this evidence …, as appropriate, because [the] consultants are highly qualified and experts in Social Security disability evaluation." *Id.* § 416.913a(b)(1).

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." *Id.* § 416.920c(a). Instead, the ALJ will consider supportability, consistency, the relationship with the claimant, any specialization, and "other factors," including evidence that a medical source is familiar with the other evidence in the claim or understands the disability program's policies and evidentiary requirements. *Id.* § 416.920c(c)(1)–(5).

The most important factors are supportability and consistency, and the ALJ must explain how he considered them. *Id.* § 416.920c(a), (b)(2). Supportability concerns the support provided by the source issuing the opinion: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). Consistency concerns a comparison with other items in the record: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

As required by the regulations, the ALJ considered Dr. Harris's and Dr. Levasseur's prior administrative findings and explained the reasons for finding them only partially persuasive. *See* Tr. 18–19. Both doctors, like the ALJ, found the plaintiff not disabled. *See* Tr. 21, 216, 226. In certain respects, the doctors' findings were less favorable to the plaintiff. They found that the plaintiff has only a mild limitation in the area of understanding, remembering, or applying information, Tr. 212, 222, while the ALJ found a moderate limitation in that area, Tr. 14. They found that the plaintiff can understand and retain simple and complex instructions, Tr. 215, 224, while the ALJ limited the plaintiff to only simple tasks, Tr. 15. Dr. Levasseur found that the plaintiff can relate effectively with the public and coworkers, can cooperate on routine tasks and transactions, and can accept directions and feedback in general, Tr. 215, and Dr. Harris found that the plaintiff "should be able to relate appropriately on a casual, limited basis with the public," "accept non-confrontational supervision and constructive criticism from supervisors,"

12

and "usually relate appropriately with cooperative, non-threatening coworkers," Tr. 225, while the ALJ found that the plaintiff must avoid contact with the public or coworkers to the extent that the plaintiff is performing tasks not requiring help from or giving help to others, Tr. 15. The doctors found that the plaintiff can adapt to most changes and tasks on a sustained basis and can avoid hazards, Tr. 215, 225, while the ALJ found the plaintiff needs a low-stress work environment, Tr. 15. The ALJ explained that the doctors' findings were persuasive insofar as the doctors supported their findings with citations to specific evidence and were mostly consistent with each other but unpersuasive insofar as they had not considered evidence post-dating their findings, including the plaintiff's testimony, warranting a limit to only simple tasks. Tr. 18–19. The ALJ explained the rejection of Dr. Harris's terms "non-confrontational" and "non-threatening" because they are not defined on a vocational basis and not clearly articulated as a limitation for the RFC. Tr. 19.

Likewise, as required by the regulations, the ALJ considered Dr. Kirkendall's opinion and explained the reasons for finding it only partially persuasive. *See* Tr. 18. In at least one respect, Dr. Kirkendall's opinion was less favorable to the plaintiff. Dr. Kirkendall opined that the plaintiff had no limitation in the ability to perform simple or complex tasks independently, Tr. 762, while the ALJ limited the plaintiff to only simple tasks, Tr. 15. The ALJ explained that Dr. Kirkendall's opinion was persuasive insofar as the examination findings and reported symptoms reasonably supported the opinion, and Dr. Kirkendall documented some memory impairment on testing, poor insight, and questionable judgment. Tr. 18; *see* Tr. 760–61. The ALJ further explained that the opinion accords with the fact that, at the time of the examination in December 2021, the plaintiff had not had any mental health or psychiatric treatment, while further explaining that later evidence—

13

medication, therapy, and counseling benefiting the plaintiff and stabilizing symptoms enough to prompt a search for employment—makes the "marked" opinion outdated. Tr. 18.

The plaintiff argues that the ALJ's explanation for rejecting Dr. Harris's findings is insufficient because the ALJ analyzed Dr. Harris's terminology—"non-confrontational" and "non-threatening"—rather than the underlying functional limitation, which assertedly concerns the plaintiff's ability to respond appropriately to supervisors. Doc. 12 at 12–16; Doc. 16 at 2. The plaintiff contends that, "even more strangely," the ALJ provided no explanation for why the plaintiff should have no contact with the public or co-workers but may have contact with supervisors without limitation. Doc. 12 at 12–16; Doc. 16 at 2. According to the plaintiff, "Perhaps the ALJ had a good reason for concluding that Plaintiff was less limited in response to supervisors than co-workers or the public, but they have not articulated it here." Doc. 12 at 16.

The plaintiff's argument is unpersuasive. The ALJ sufficiently conveyed that "non-confrontational" and "non-threatening" do not aptly equate to an RFC limitation. The ALJ sufficiently explained the absence of a limitation concerning supervisors when he qualified the limitation concerning the public or coworkers with the statement, "meaning [the plaintiff] need[s] tasks that do not require the assistance of others or require them to assist others in the performance of their tasks," Tr. 15, 17–18; when he explained the bases for a moderate limitation in the area of interacting with others as the plaintiff's dislike of crowds and interactions with others and problems working with others and maintaining friendships (bases different from disliking or having problems with authority figures), Tr. 14; and when he found persuasive Dr.

14

Harris's finding that the plaintiff can "adapt to an ordinary routine work setting" and Dr. Levasseur's finding that the plaintiff can "accept directions and feedback, but may show limited tolerance for frequent recurrent contact with the general public," Tr. 18–19.

The plaintiff argues that the ALJ's reason for finding Dr. Kirkendall's opinion that the plaintiff has a marked limitation in the areas of social interaction, stress tolerance, and schedule maintenance is flawed and unsupported by the medical evidence showing later psychiatric crises that included involuntary "Baker Act" hospitalizations and significant symptoms reflecting "a continued pattern of severe interpersonal, behavioral, and stress-related dysfunction that appears entirely consistent with marked limitations rather than improvement." Doc. 12 at 16–18. The plaintiff contends that the ALJ had to evaluate the plaintiff "across the entire adjudicatory span, not just at the point of perceived improvement[.]" Doc. 12 at 19. Contrary to the plaintiff's argument, the ALJ considered the entire period and relied on substantial evidence to find that the plaintiff had not maintained marked limitations in the areas identified by Dr. Kirkendall; specifically, evidence that the plaintiff thereafter started medication, therapy, and counseling, resulting in improvement and stabilization of symptoms to the point that the plaintiff was pursuing employment. *See* Tr. 18. The RFC's inclusion of the need for a low-stress work environment, simple tasks, and avoidance of contact with the public and coworkers, Tr. 15, shows that the ALJ found limitations in at least the areas of social interaction and stress tolerance, just not the marked limitations that Dr. Kirkendall found near the very beginning of the period under consideration.

15

The plaintiff complains that the ALJ failed to cite specific evidence contradicting Dr. Kirkendall's opinion. Doc. 12 at 18–19. This complaint is for naught. The decision makes clear the evidence on which the ALJ was relying. *See, e.g.*, Tr. 14 (citing Exhibits 1F, 3F, 5F, 8F, 11F, 14F, 17F, and 18F (Tr. 608–11, 678–739, 756–63, 781–823, 842–84, 892–918, 1059–1202) as evidence supporting the finding that the plaintiff has a moderate limitation in the area of "interacting with others"); Tr. 14 (citing Exhibits 2F, 3F, 5F, 8F, 18F, and 20F (Tr. 612–739, 756–63, 781–823, 1066–1202, 1219–74) as evidence supporting the finding that the plaintiff has a moderate limitation in the area of "adapting or managing oneself"); Tr. 15 (incorporating the summary of the plaintiff's prior hearing testimony (*see* Tr. 240–41, 845) and citing the plaintiff's recent hearing testimony (*see* Tr. 123) as evidence about medication and the absence of side effects); Tr. 16 (citing Exhibits 2F, 3F, 14F, 15F, and 16F (Tr. 612–739, 892–1058) as evidence of the plaintiff's care and treatment with Aza Health and the plaintiff's report of stable mental-health symptoms); Tr. 16 (citing Exhibit 1F (Tr. 608–11) as evidence of the second consultative examination of the plaintiff, including mental status findings that included "intact memory, concentration, and attention" and "logical, linear, and goal-directed" thought processes, and a description of the plaintiff as cooperative and receptive, with good eye contact, albeit histrionic); Tr. 16–17 (citing Exhibits 8F, 10F, 11F, and 12F (Tr. 781–823, 839–88) as evidence of the plaintiff's care plan with Epic); Tr. 17 (citing Exhibit 20F (Tr. 1219–74) as evidence of the plaintiff's care at SMA Healthcare, at which the plaintiff reported feeling more stable and expressed an interest in becoming more independent and employed). The ALJ had no obligation to repeat the citations.

Relying on Social Security Ruling (SSR) 16-3p, the plaintiff complains about the ALJ's reliance on treatment and medication without acknowledging

barriers that prevented the plaintiff from maintaining consistent care; specifically, transportation problems and an inability to refill medications due to a lack of funds. Doc. 12 at 20–21.

SSR 16-3p addresses the evaluation of a claimant's symptoms:

[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. **We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints**.

SSR 16-3p (emphasis added).

The plaintiff's reliance on SSR 16-3p is misplaced. SSR 16-3p instructs an ALJ to consider possible reasons for non-compliance or failure to maintain treatment consistent with a claimant's complaints if the ALJ finds that the claimant's symptoms are inconsistent with the record on those bases. Here, the ALJ found that the plaintiff's improvement from medication and treatment undermined Dr. Kirkendall's more limiting opinion. Tr. 18. The ALJ properly relied on the plaintiff's treatment and medication. *See* Tr. 15 (incorporating Tr. 240–41) ("The [plaintiff] is prescribed medication. The [plaintiff] testified that the medication is effective in allowing them to complete a greater range of activities. … Asked about medication side effects, the [plaintiff] testified that they do not notice any side effects, which is consistent with their statements in the record[.]"); Tr. 15 ("At the most recent hearing, the [plaintiff] testified that their medications help with no specific side effects."); Tr. 16 ("The [plaintiff] continued followup and counseling at Aza Health through May 2023.

17

Those records document variable report of symptoms. Notably they indicate medication effectiveness with mood improvement when the [plaintiff] is compliant with medication and increased symptoms during periods when the [plaintiff] stopped taking medications or ran out of them. Counseling recommendations also included yoga and tai chi. By mid-2023 the [plaintiff] reported stable mental health symptoms (Exhibits 2F; 3F; 14F; 15F; 16F [Tr. 612–739, 892–1058])[.]"); Tr. 16 ("The [plaintiff] also underwent a second consultative examination in March 2023. The [plaintiff] reported significant mood swings due to being off of their medications. The [plaintiff] reported that they were off medication because they could not secure transportation. The [plaintiff] denied needing reminders to take their medication."); Tr. 16–17 ("The [plaintiff] next established care at Epic in April 2023 and a care plan was established. However, transportation was an issue, and, while Epic offered the [plaintiff] a ride[-]sharing service, the [plaintiff] declined and it appears treatment did not continue (Exhibits 8F; 10F; 11F; 12F [Tr. 781–823, 839–88])."); Tr. 17 ("The [plaintiff] was again hospitalized in May 2024 after an overdose. The [plaintiff] reported having been off medication since September 2023 and having taken 8 pills they had left over since that time."); Tr. 17 ("By November 2024, the [plaintiff[ reported not consistently taking medication but still reported an improvement in symptoms."); Tr. 17 ("Medication effectiveness is also documented in treatment notes which document symptom improvement and stability when the [plaintiff] is taking medication."); Tr. 18 ("However, notably, at the time of the examination, the [plaintiff] reported to Dr. Johnson having wildly up and down moods due to being off medication.").

Reversal to reconsider the medical opinions and prior administrative findings is unwarranted.

**4.**

The plaintiff argues that reversal is warranted because the ALJ provided nothing more than a "boilerplate statement regarding the Paragraph C criteria, which are outcome-determinative in the evaluation of Listings 12.04, 12.06, and 12.15[.]" Doc. 12 at 21–24.

Paragraph B provides criteria to assess functional limitations imposed by medically determinable mental impairments. 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2)(b). The Social Security Administration considers the claimant's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3) (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)). To satisfy the "paragraph B" criteria, the mental impairment must result in "'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(A)(2)(b).

The area of "adapt[ing] or manag[ing] oneself … refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." *Id*. § 12.00(E)(4). The following are examples of mental functioning in this area:

> Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

*Id*.

19

Paragraph C of Listings 12.04, 12.06, and 12.15 provides criteria "to evaluate 'serious and persistent mental disorders.'" *Id.* § 12.00(A)(2)(c). To satisfy the criteria, a mental disorder "must be 'serious and persistent'; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, and evidence that satisfies the criteria in both C1 and C2[.]" *Id.*; *see also id.* (explaining that "paragraph C" refers to the criteria in paragraph C of those Listings).

Listing 12.04 addresses depressive, bipolar, and related disorders. *Id.* § 12.04. Listing 12.06 addresses anxiety and obsessive-compulsive disorders. *Id.* § 12.06. Listing 12.15 addresses trauma-and stressor-related disorders. *Id.* § 12.15. Each applies if paragraphs A (specific to the Listing) and C are both satisfied. *Id.* §§ 12.04, 12.06, 12.15. For each, paragraph C provides:

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
> > 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
> >
> > 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Id.* §§ 12.04, 12.06, 12.15 (internal citations omitted). The criterion in C2 is satisfied under the following circumstances:

> The criterion in C2 is satisfied when the evidence shows that, despite … diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or

20

to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports. Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

*Id.* § 12.00(G)(2)(c) (internal citation omitted).

An ALJ must state the grounds for his decision with enough clarity to enable a court to conduct meaningful review. *Owens v. Heckler*, 748 F.2d 1511, 1514–15 (11th Cir. 1984). A finding that a claimant's impairments do not satisfy the requirements of a Listing may be implied from the ALJ's decision. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986); *see Edwards v. Heckler*, 736 F.2d 625, 629 (11th Cir. 1984); *James v. Comm'r, Soc. Sec. Admin.*, 657 F. App'x 835, 838 (11th Cir. 2016); *see e.g., Hutchison*, 787 F. 2d at 1463 ("We thus consider it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments."); *Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 677 (11th Cir. 2015) (holding that the ALJ implicitly considered and rejected a finding of disability under either Listing 12.02 or Listing 12.03). Thus, while an ALJ must consider the Listings, the ALJ need not "mechanically recite the evidence leading to" findings about the listings. *Hutchison*, 787 F.2d at 1463.

The ALJ expressly stated that the record does not establish that the plaintiff has only marginal adjustment; i.e., the "minimal capacity to adapt to changes in the [plaintiff]'s environment or to demands that are not already

21

part of the [plaintiff]'s daily [life]." Tr. 15; *see* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(G)(2)(c). Contrary to the plaintiff's argument, more was not required, especially considering the entire decision, which includes the finding that the plaintiff has only a moderate limitation in the area of adapting or managing oneself and the explanation for that finding. Tr. 14 ("The record documents a history of suicidal ideation and a suicide attempt. The [plaintiff] also has variable insight and judgement ranging from poor/impaired to fair to adequate to normal/good/intact (Exhibits 2F; 3F; 5F; 8F; 18F; 20F [Tr. 612–739, 756–63, 781–823, 1066–1202, 1219–74]).").

Reversal to reconsider the paragraph C criteria is unwarranted.

**5.**

The Commissioner's final decision is **affirmed**. The clerk is **directed** to enter judgment for the Commissioner of Social Security and against Kyle Powell and close the file.

**Ordered** in Jacksonville, Florida, on April 27, 2026.

*Patricia D. Barksdale*

Patricia D. Barksdale
*United States Magistrate Judge*

22